## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JENNIFER LIOTTA, on behalf of herself
and all others similarly situated,

                    Plaintiff,                Case No.: 1:16-cv-04634-WSD

    vs.

WOLFORD BOUTIQUES, LLC

                    Defendant.

---

### MEMORANDUM OF LAW IN SUPPORT OF MUTUAL CONSENT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, AND SCHEDULING OF A FINAL APPROVAL HEARING

Plaintiff, Jennifer Liotta ("Plaintiff"), and Defendant, Wolford Boutiques, LLC ("Wolford") jointly move for preliminarily approval of the class settlement, and to preliminarily certify the settlement class, approve the class notice, and schedule the final approval hearing.

### INTRODUCTION

The parties reached the proposed settlement after litigation of critical issues, which were followed by substantive arm's length settlement discussions and ultimately resulted in the agreed upon proposed Settlement that, if approved

1

by the Court, will fully resolve this Action[1].

The Court should grant preliminary approval of the Proposed Settlement because it addresses the reasonable objectives of this litigation without the uncertainties Class Members would face in continued litigation. The settlement is fair, and compensates the Class Members with non-expiring and fully transferable gift cards rather than mere coupons  The essential terms are these:

1. Wolford will pay Class Members via non-expiring fully transferable gift cards an amount commensurate with the number of texts received, for a maximum anticipated total amount of $412,440.00. The gift card cash value amounts will not require any further expenditure by Class Members and do not represent a coupon settlement.  Class Members who submit valid claims and received only one of the text messages at issue will receive a gift card in the amount of Sixty Dollars ($60).  Class Members who submit valid claims and received both of the text messages at issue will receive a gift card in the amount of One Hundred and Twenty Dollars ($120).

2. Separate from and in addition to the benefits provided to the Settlement Class, Wolford will pay the costs of class notice, and costs associated with administering the Settlement.

---

[1] All defined terms have the same meaning as in the Settlement Agreement.

3.    Separate from and in addition to the benefits provided to the Settlement Class, Wolford will pay Jennifer Liotta $5,000.00 for her service as class representative.

4.    Separate from and in addition to the benefits provided to the Settlement Class, Wolford will pay one third of the anticipated maximum settlement amount, or a total of $137,480.00, as attorneys' fees to Plaintiff's counsel within fifteen days of Final Approval.

The Proposed Settlement was reached as a result of arm's-length negotiations between Class Counsel and counsel for Wolford. The Proposed Settlement satisfies the requirements of Fed. R. Civ. P. 23.   The Proposed Settlement is not a coupon settlement subject to 28 U.S.C. §1712.

Accordingly, the Parties jointly move the Court for a Preliminary Approval Order:

1)    finding that the proposed Settlement is sufficiently fair, reasonable, and adequate to notify the members of the Settlement Class;

2)    preliminarily certifying the proposed Settlement Class, for purposes of the Proposed Settlement only;

3)    appointing Plaintiff's counsel as Class Counsel for the proposed Settlement, and appointing Plaintiff to serve as the Class Representatives for the proposed Settlement Class;

4)    appointing JND Legal Administration[2] to act as the claims

---

[2] JND Legal Administration's pertinent information is attached hereto as Exhibit A.

administrator

5) establishing a date for a hearing on final approval of the Proposed Settlement;

6) approving the form of notice to the Settlement Class, and claim form;

7) approving the notice plan and directing that notice be mailed and published;

8) instituting a stay of all proceedings against the Releasees in this action based on the facts alleged in the Class Action;

9) establishing a deadline for filing papers in support of final approval of the proposed Settlement;

10) establishing a deadline for the filing of objections by members of the proposed Settlement Class; and

11) establishing a deadline for members of the proposed Settlement Class to exclude themselves from the proposed Settlement.

The Parties submit that the Proposed Settlement satisfies the required standards of Fed. R. Civ. P. 23 in that it is sufficiently fair, reasonable, and adequate. Moreover, the Parties represent that because the settlement compensation to Class Members consists of non-expiring and fully transferable gift cards that will not require any further expenditure by Class Members, this settlement is not a "coupon settlement" and is therefore not subject to 28 U.S.C. §1712. Accordingly, the Parties jointly request that the Court grant their Motion to Approve Class Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice and Scheduling of Final Hearing.

## FACTUAL BACKGROUND

On or about July 7, 2016, Defendant arranged for and/or caused a text message advertising Wolford's goods to be sent to Class Members' telephones. Plaintiff alleges that the text message advertisement did not properly identify Wolford or provide an appropriate opt-out mechanism.  Wolford denies the allegations of wrongdoing.

On or about September 2, 2016, Wolford's agent sent a second round of text messages.  Again, Plaintiff alleges that the text message advertisement did not properly identify Wolford or provide an appropriate opt-out mechanism. Wolford denies the allegations of wrongdoing and alleges that the texts were sent by its agent in error.

Through the course of discovery in this case, the Parties have determined that 1,684 Class Members received just one text from Wolford and 2,595 received both texts nationwide.

Plaintiff Jennifer Liotta brought the underlying action on behalf of herself and all other recipients of the text messages.  After litigation of legal issues at the core of this case, Class Counsel and Wolford's Counsel negotiated a settlement of all claims that they believe to be fair to all parties and which resolves the uncertainty inherent in litigation.

## I.    The TCPA

The TCPA makes it unlawful for "any person…(a) to make any call (other than a call for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…(iii) to any telephone number assigned to a…cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii). Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA. 47 U.S.C. § 227(b)(3)(C).

The Federal Regulations implementing the TCPA place mandatory notice requirements on advertisements. In pertinent part, 47 C.F.R. § 64.1200(b) provides:

> All artificial or prerecorded voice telephone messages shall . . . [a]t the beginning of the message, *state clearly the identity of the business, individual, or other entity that is responsible for initiating the call*. . . . [and] [i]n every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii), *provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request*, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section. When the called person elects to opt out using such mechanism, the mechanism, must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call. When the artificial or prerecorded voice telephone message is left on an

> answering machine or a voice mail service, such message must also
> provide a toll free number that enables the called person to call back
> at a later time and connect directly to the automated, interactive voice-
> and/or key press-activated opt-out mechanism and automatically
> record the called person's number to the seller's do-not-call list.

47 C.F.R. § 64.1200(b)(1) & (3) (emphasis added).  Accordingly, the TCPA's

regulations provide that all text message advertisements must: (1) clearly state the

identity of the business that is responsible for sending the text message; and (2)

provide an opt-out mechanism, so the recipient can remove herself from the

contact list.

## II.    The Litigation

On September 8, 2016, Plaintiff filed a Georgia Civil Action alleging a

class  in the State Court of Fulton County, Georgia.  On or about December 16,

2016, Wolford timely removed the civil action to the United States District Court

for the Northern District of Georgia.  Plaintiff's Complaint alleged violations of

TCPA by Wolford arising from an alleged insufficient identification of the

sender and an insufficient opt-out mechanism.

On January 6, 2017, Wolford moved to dismiss Plaintiff's Complaint

alleging, *inter alia*, a lack of standing.  Defendant's lack of standing argument

was based primarily on *Spokeo, Inc. v. Robins* in which the United States

Supreme Court held that a concrete injury is required for Article III standing to

sue. 136 S.Ct. 1549 (2016).

On March 30, 2017, this Court issued a detailed Opinion and Order denying Wolford's Motion to Dismiss. Thereafter, Plaintiff's Counsel and Wolford began the process of litigating the case, including written discovery and Plaintiff's Motion to Add a Party Defendant. Additionally, on June 2, 2017 Plaintiff moved for certification of the class.

Throughout the litigation process initial settlement discussions had been ongoing. Following this Court's denial of Wolford's Motion to Dismiss and throughout the remainder of the litigation process, Class Counsel and Wolford's Counsel engaged in more substantive settlement discussions and negotiations. The instant motion and underlying settlement agreement are the product of that arm's length and detailed negotiation.

### III.    Summary of the Proposed Settlement

After months of arm's length settlement negotiations between Class Counsel and counsel for Defendant, Plaintiff, individually and on behalf of the members of the Class, reached a Settlement with the Defendant. On December 21, 2017, the Parties executed the Settlement Agreement, subject to Court approval.

A. <u>Stipulation as to Certification of Settlement Class</u>

Pursuant to the Settlement Agreement, the parties stipulate that the

8

requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied in this case and that the following Settlement Class should be certified by the Court.

> "Class" means the owners of the telephone numbers that are claimed to have received one or both of the Text Messages sent by Wolford on July 7, 2016 and September 2, 2016. Excluded from the Class is the judge presiding over this matter, any members of his judicial staff, the officers and directors of WOLFORD, and persons who timely and validly request exclusion from the Class.

B. Consideration for Settlement

Wolford has agreed to pay each Class Member an amount commensurate with the number of text messages received by that Class Member.   Each payment will be made via non-expiring and fully transferable gift cards that do not require any further expenditure by the Class Member.

"Tier One" Class Members are those Class Member who received only one of the Text Messages. One thousand six hundred eighty-four (1,684) Class Members are Tier One Class Members.   Each Tier One Class Member who submits a valid claim will be issued a gift card in the amount of $60.00.

"Tier Two" Class Members" are those Class Members who received both Text Messages at issue. Two thousand five hundred ninety-five (2,595) Class Members are Tier Two Class Members. Each Tier Two Class Member who

submits a valid claim will be issued a gift card in the amount of $120.00.

     C. <u>Payment of Administrative and Notice Costs</u>

In addition to the Gift Cards, Wolford will cover all costs associated with the Claims administrator, including notice to the Class Members. Notice will be provided to the Class Members by written mail via post-card pursuant to addresses determined from Wolford's records and/or a look-up on the text numbers using a historic look-up process as deemed necessary by the Claims Administrator.

     D. <u>Attorneys' Fees and Costs</u>

Wolford will pay Plaintiff's counsel directly without impact on the Class Member's recovery in the amount of one third of the maximum gross recovery by class members. Plaintiff's counsel will apply to the Court for approval of the award of attorneys' fees, costs, and expenses and Wolford will consent to the Motion. Wolford has agreed to pay attorneys' fees, costs, and expenses awarded by the Court separately from the relief for the Settlement Class Members.

     E. <u>Service Award</u>

Plaintiff's counsel will apply for and Wolford will consent to a service award of $5,000.00 for Jennifer Liotta, the class representative. The service award is intended to compensate Ms. Liotta for her efforts in the litigation and

commitment on behalf of the Settlement Class. Ms. Liotta's award will be paid directly by Wolford so as not to impact the amount paid to the Settlement Class. Ms. Liotta was the sole representative of the class in this litigation.

F. <u>Release</u>

In exchange for the Settlement benefits, the Plaintiff and the Settlement Class Members will release Wolford from any claims relating to the issues in this case.

## ARGUMENT

**I.    The Court Should Grant Preliminary Approval of the Proposed Settlement.**

At this time, Plaintiff seeks the Court's preliminary approval of the Proposed Settlement, authorization to disseminate notice to members of the proposed Settlement Class, and to stay all proceedings against the Defendant and Releasees in this Action or in any action asserting claims based on the facts alleged in this Action brought by or on behalf of any members of the Settlement Class.

A. <u>Governing Standards</u>

Court approval is required for any class settlement that releases claims of absent class members. Fed. R. Civ. P. 23(e). "Judicial review of a proposed class

action settlement is a two-step process…." <u>Dalton v. Cardworks Servicing, LLC</u>, No. 09-00563, 2010 U.S. Dist. LEXIS 135136 at *6 (S.D. Ala. Nov. 19, 2010) (internal citations omitted). *First*, the Court "makes a preliminary fairness evaluation." MCL § 21.632 (4th ed. 2004). The preliminary evaluation considers whether the settlement is "within the range of possible approval." <u>Fresco v. Auto Data Direct, Inc.</u>, No. 03-61063, 2007 U.S. Dist. LEXIS 37863, at *11-12 (May 11, 2007, S.D. Fl); *see also* <u>In re Corrugated Container Antitrust Litig.</u>, 643 F.2d 195, 205 (5th Cir. 1981).

> "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2015). Second, after preliminary approval and notice to the Class, the Court conducts a final approval hearing to more fully assess the fairness, reasonableness, and adequacy of the settlement. *Id.*

The law favors the settlement of class actions. <u>Bennett v. Behring Corp.</u>, 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."). "[T]here is a strong judicial policy favoring settlement and…particularly in class action suits, there is an overriding public interest in favor of settlements." <u>Meyer v. Citizens and Southern Nat'l Bank</u>, 677 F. Supp. 1196, 1200 (M.D. Ga. 1988) (Elliott, R.) (citation and internal quotations omitted). "Settlements conserve judicial resources by avoiding the

expense of a complicated and protracted litigation process and are highly favored by the law." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (Thrash, T.).

This Court has broad discretion in approving a settlement. Id. At this stage, "the Court should not conduct a trial on the merits." Id. Instead, a "district court may rely upon the judgment of experienced counsel for the parties...[and] [a]bsent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" Nelson v. Mead Johnson & Johnson Co., 484 F. App'x 429, 434 (11th Cir. 2012) (quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)); see also In re Motorsports, 112 F. Supp. 2d at 1333.

In the Eleventh Circuit, "[p]reliminary approval is appropriate where the proposed Settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." In re Checking Account Overdraft Litig., 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). In addition, at the preliminary approval stage, district courts within this Circuit have looked ahead to the Bennett factors, the standard for final approval:

(1) the likelihood of success at trial; (2) the range of possible

13

> recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

Columbus Drywall & Insulation, Inc. v. Masco Corp., 258 F.R.D. 545, 558-59 (quoting Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984)). In this case, the Proposed Settlement should be approved. As detailed below, it is the product of arm's length negotiations, fairly compensates the Class Members, and the Bennett factors weigh in favor of approval.

> A. The Proposed Settlement is the Result of Good Faith Negotiations, is Not Obviously Deficient, and Falls within the Range of Reasonableness.

This Court should preliminarily approve the proposed Settlement because it is the product of good faith, arm's length negotiations, by experienced counsel. "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." In re Checking Account Overdraft, 275 F.R.D. at 661. In this case, the parties began seriously discussing settlement after the Court denied Wolford's Motion to Dismiss, and conducting discovery. Settlement discussions continued after Plaintiff moved for class certification. Thus, the parties had devoted significant time and effort to investigating the facts and legal issues and reached the

settlement terms only after that effort.

Both the Settlement Class and Wolford, were represented by experienced class action counsel. The settlement negotiations including numerous telephone conferences and written communications. There is no evidence, nor could there be, of any collusion between the parties. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." T.A.N. v. PNI Digital Media, Inc., No. 2:16-cv-132, 2017 U.S. Dist. LEXIS 85058 (S.D. Ga. Jun. 2, 2017) (Wood, L.) (quoting MCL Third, § 30.42 (1995)). Indeed, here, to avoid even the appearance of impropriety, all substantive settlement negotiations were in writing.

The settlement is also within the range of reasonableness. Class members receive a financial benefit commensurate with the harm alleged. Those class members who received just one text message will receive a $60.00 non-expiring and fully transferable gift card. Those class members who received two text messages will receive a non-expiring and fully transferable $120.00 gift card. Thus, each class member will be receive direct compensation per text in an amount that is a fair and reasonable settlement of claims without the risk of litigation.

These benefits compare favorably with some settlements in recent TCPA cases. See, e.g., James v. JP Morgan Chase Bank, N.A., No. 8:15-cv-2424, 2016 U.S. Dist. LEXIS 167022 (M.D. Fl. Nov. 22, 2016) (approving settlement of $3-$5 per class member); Couser v. Comenity Bank, 125 F.Supp. 3d 1034, 1043 (S.D. Cal. 2015) (approving settlement of $13.75 per class member); In re Capital One Tel. Consumer Prot. Act Litig, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (approving settlement of $2.72 per violation, $34.60 for each class member that actually submitted claim); Mendez v. C-Two Grp., Inc., No. 13-cv-05914, 2017 U.S. Dist. LEXIS 44816 (N.D. Cal. Mar. 27, 2015) (approving settlement of $10.00 certificate per class member).

### B. The Bennett Factors Support Preliminary Approval

#### 1. The Benefits Outweigh the Risks at Trial

The trial court weighs the first Bennett factor, the likelihood of success at trial, "against the amount and form of relief contained in the settlement." Saccoccio v. JP Morgan Chase Bank, N.A., 297 F.R.D. 683, 692 (S.D. Fla. 2014) (quotation omitted). This factor weighs in favor of approval where "success at trial is not certain for Plaintiff." Burrows v. Purchasing Power, LLC, No. 1:12-CV-22800, 2013 U.S. Dist. LEXIS 189397, at *14 (S.D. Fla. Oct. 7, 2013). Although Plaintiff is confident in the merits of the claims, the risks involved in

prosecuting a class action through trial cannot be disregarded. Class certification is always challenging and, assuming the class is certified, Plaintiff risks losing on summary judgment, at trial, or on appeal. See In re Motorsports, 112 F. Supp. 2d at 1334 ("[T]he trial process is always fraught with uncertainty."). For TCPA cases, in particular, it is a complex and evolving area of law with a number of "divergent and conflicting decisions." Application of the TCPA to Intrastate Telemarketing Calls and Faxes, 52 Fed. Comm. L.J. 667, 669 (2000).

There would be contentious argument on at least the following issues: (1) Whether the Defendant used an "ATDS" within the meaning of the TCPA, including the alleged level of "human intervention"; (2) Whether Class Members had provided consent; (3) Whether the text message properly identified Wolford; (4) Whether the Class is certifiable; and (5) Whether the texts contained an appropriate opt-out mechanism. While Plaintiff is confident in his position on each of the elements to be proven and defenses to be presented, so too is Wolford. Wolford need only win on one issue, while the Plaintiff must prevail on all. The proposed Settlement avoids these uncertainties and provides the Class with meaningful and certain relief.

> 2. *The Settlement is Within the Range of Possible Recoveries and is Fair, Adequate, and Reasonable*

The second and third Bennett factors—whether the settlement is within the range of possible recoveries and is fair, adequate, and reasonable—can be considered together. Burrows, 2013 U.S. Dist. LEXIS 189397, at *14. "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1323 (S.D. Fl. 2005). The range of outcomes, including the possibility of a defense verdict and zero recovery, must be considered.  In re Toys R. Us. FACTA Litig., 295 F.R.D. 438, 453 (C.D. Cal. 2014). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." Officers for Justice v. Civil Serv. Com., 688 F.2d 615, 625 (9th Cir. 1982). "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" Id. at 624 (quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977).

Accordingly, even a minimal settlement can be approved. See, Burrows, 2013 U.S. Dist. LEXIS 189397, at *14. "That the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair. 'In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part

of a single percent of the potential recovery.'" In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 325 (N.D. Ga. 1993) (Shoob, M.)(quoting in part City of Detroit v. Grinnell Corp. 495 F.2d 448, 455 (2d. Cir. 1974).

Here, the Settlement amount for each class member is substantial and well within the range of possible recoveries, considering the numerous potential issues (trial and appellate) in the case, which could result in a smaller recovery or no recovery at all. With the Settlement, Class Members submitting valid claims will be paid a gift card worth $60.00 per text message they received. These benefits compare favorably with settlements in recent TCPA cases. See, e.g., James, 2016 U.S. Dist. LEXIS 167022 ($3-$5 per class member); Couser, 125 F.Supp. 3d at 1043 ($13.75 per class member); In re Capital One Tel. Consumer Prot. Act Litig, 80 F. Supp. 3d at 789 ($2.72 per violation, $34.60 for each class member); Mendez v. C-Two Grp., Inc., 2017 U.S. Dist. LEXIS 44816 ($10.00 certificate per class member).

        *3. Continued Litigation Would Be Complex, Expensive, and Lengthy.*

A "[s]ettlement [that] will alleviate the need for judicial exploration of...complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. Lipuma, 406 F. Supp. 2d at 1324 (internal citation omitted). There were a number of additional

procedural hurdles, each fraught with risk to Plaintiff, at the time the parties reached agreement. While Plaintiff had prevailed at the motion to dismiss stage, the Motion to Certify the Class was pending and actively opposed by Wolford. Moreover, Wolford was likely to continue its dispositive motion practice—with extensive briefing on summary judgment looming, after more in depth discovery. The Plaintiff would also potentially need to present expert witnesses, which are expensive and make continued prosecution of the case uncertain.

The proposed Settlement, on the other hand, provides the Settlement Class with guaranteed and immediate recovery. This factor weighs in favor of preliminary approval. Columbus Drywall, 258 F.R.D. at 559-60 (settlement merited approval when "Plaintiffs [would] not have any guarantee that they will receive a larger recovery from the Settling Defendants were they to forego the settlement offer.").

### 4. Degree of Opposition to Settlement

Courts do not consider this factor until notice has been provided to settlement class members. See Columbus Drywall, 258 F.R.D. at 560.

### 5. The Stage of Proceedings

The purpose of this factor is "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the

benefits of settlement against further litigation." <u>Lipuma</u>, 406 F. Supp. 2d at 1324. Before filing the Complaint, Plaintiff's Counsel devoted significant time to investigating the facts related to the Text Message. Plaintiff's Counsel also extensively researched the claims to be asserted under the TCPA, and for class certification. After filing the Complaint, Counsel opposed a motions to dismiss, engaged in written, and Moved for Class Certification. As a result of these actions, combined with their experience, Counsel can adequately analyze the strengths and weaknesses of the case.

## II.    The Court Should Certify the Proposed Settlement Class

When a settlement is reached before certification, a court must determine whether to certify the settlement class. See, e.g., Manual for Complex Litigation § 21.632 (4th ed. 2014); <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 613-14 (1997). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. See, e.g., <u>Columbus Drywall</u>, 258 F.R.D. at 553. Courts have "broad discretion" in applying Rule 23 to a settlement class. <u>Walco Investments, Inc. v. Thenen</u>, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

The Court should certify the settlement class here. Courts routinely certify TCPA classes. See, e.g., <u>Bee, Denning, Inc. v. Capital Alliance Group</u>, No. 13-cv-

2654 (S.D. Cal. Sept. 24, 2015); <u>Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC</u>, No. 12-22330, 2014 U.S. Dist. LEXIS 177222 *9 (S.D. Fl. Dec. 23, 2014); <u>C-Mart, Inc. v. Metro. Life Ins. Co.</u>, 299 F.R.D. 679, 688 (S.D. Fl. Feb. 4, 2014); <u>Palm Beach Golf Center-Boca v. Sarris</u>, No. 12-80178, 2015 U.S. Dist. LEXIS 167142 *11-12 (S.D. Fl. Aug. 4, 2015).

    A. <u>The Settlement Class Satisfies Rule 23(a)</u>

    Rule 23(a) requires proof that of numerosity, commonality, typicality and adequacy. Each element is met here.

    *1. Numerosity*

    Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." The proposed class consists of 4,279 persons, so this requirement is easily met. <u>Cox v. Am. Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity is met with 40 class members).

    *2. Commonality*

    "The commonality requirement of Rule 23(a)(2) demands 'questions of law or fact common to the class." <u>Legg v. Voice Media Group, Inc.</u>, 2015 U.S. Dist. LEXIS 61836 *11 (S.D. Fl. May 5, 2014). This is a "relatively light burden." <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1268 (11th Cir. 2009).

"Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." Williams v. Mohawk Indus., 568 F.3d 1350, 1355 (11th Cir. 2009). "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." Morefield v. NoteWorld, LLC, NO. 1:10-CV-00117, 2012 U.S. Dist. LEXIS 54664 at *6 (S.D. Ga. April 18, 2012) (Hall. R.).

Here, the same general course of conduct applies to all class members: Wolford and its agent sent text message to all the members, and the class members contend that those same texts failed to adequately identify Wolford and failed to include an appropriate opt-out mechanism. The common issues include, but are not limited to: (a) whether the text messages adequately identified Wolford; (b) whether the text messages contained an appropriate opt-out mechanism; (c) whether Wolford acted intentionally; and (d) whether Wolford had obtained the requisite level of consent. Courts routinely find the commonality element satisfied in TCPA cases. See Legg, 2015 U.S. Dist. LEXIS 61836 at *10; C-Mart, Inc., 299 F.R.D. at 688; Physicians Healthsource, Inc., 2014 U.S. Dist. LEXIS 177222 at *13-14; Palm Beach, 2015 U.S. Dist. LEXIS 167142 at *11-12.

### 3. Typicality

The typicality requirement primarily focuses on whether the named plaintiffs' claims "have the same essential characteristics" as claims of other class members. See, e.g., Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985). The burden to meet typicality is also light. In re Disposable Contact Lens Anti. Lit., 170 F.R.D. 524, 532 (M.D. Fla. 1996). "Class members' claims need not be identical to satisfy the typicality requirement." Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012). All that is required is a "sufficient nexus" between the named representative and the class members. Id. "This nexus exists if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Id.

Here, the Plaintiff's claims are typical of those of the Class because they arise from the same conduct of Wolford in sending the text messages. They are also based on the same legal theory that Wolford violated the TCPA by sending the text messages. Typicality is therefore met.

### 4. Adequacy of Representation

The adequacy requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequacy of representation analysis encompasses two separate

inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). In assessing this, courts primarily consider "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." Lyons v. Georgia-Pac. Corp. Sala-Ried Employees Ret. Plan, 221 F.2d 123, 1253 (11th Cir. 2000).

These requirements are clearly met here. The Plaintiff's interests are not antagonistic to, but are the same as, those of the absent class members because they all seek to prove that Wolford violated the TCPA by sending the text messages. In addition, the Plaintiff has retained qualified and experienced counsel to pursue this action.

B. Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." When "[c]onfronted with a request for settlement- only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." Achem, 521

U.S. at 620.

### 1. Predominance

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." Carriuolo v. GM Co., 823 F.3d 977, 985 (11th Cir. 2016). Predominance does not require that all questions be common, but rather that "a significant aspect of the case...can be resolved for all members of the class in a single adjudication." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (internal citations omitted). The requirement for predominance is met here because the overwhelming issues of law and fact are common to all class members. This is why classes are routinely certified in TCPA cases. See Sec. II, *supra*.

### 2. Superiority

"The superiority inquiry focuses on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" Physicians Healthsource, Inc., 2014 U.S. Dist. LEXIS 177222 at *22-23 (quoting in part Sacred Heart Health Sys. v. Humana Military Healthcare Servs., 601 F.3d 1159, 1183-84 (11th Cir. 2010). It has been recognized that class actions are often superior to individual TCPA actions because the cap on statutory

damages, and no fee shifting provision, makes it unlikely an individual would pursue the claim alone. "As a general matter, TCPA classes are routinely certified as class actions because the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all point toward the superiority of a class action." Id. at *22-23. Indeed, it is unlikely that a plaintiff would pay a $350 filing fee to bring an individual TCPA claim for $500. Mims v. Arrow Fin. Servs., LLC, 132 S.Ct. 740, 753 (2012). The same is true here, satisfying the superiority prong.

### III.   The Court Should Appoint Plaintiff's Counsel as Lead and Liaison Counsel.

In appointing class counsel, Rule 23(g) states that the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class…." Here, the Proposed Class Counsel has served as the sole counsel in this action, identifying and investigating the claims. Proposed Class Counsel prepared the Complaint, successfully defended the motion to

dismiss, began critical discovery, moved for class certification and, and negotiated a fair resolution with Wolford. Proposed Class Counsel has intensely investigated the law and its application to the facts surrounding this class action, and Proposed Class Counsel has experience in handling complex class actions. [*See* Declarations of Bonder and White, attached to Plaintiff's Motion to Ceritification, Docments 23-2 and 23-3]. Thus, the Plaintiff respectfully requests that the Court appoint as Class Counsel, Scott L. Bonder and Joseph A. White of Fried & Bonder, LLC.

## IV.    The Court Should Approve the Proposed Notice Program

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(c)(2)(B) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "[W]hat amounts to reasonable efforts under the circumstances is for the court to determine after examination of the available information and the possible methods of identification." In re Domestic Air, 141 F.R.D. 535, 539 (N.D. Ga.). The notice "must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or

remain a member of the class and be bound by the final judgment." Id. at 553.

The Notice Program satisfies the requirements or Rule 23. Notice will be provided to the Class Members by written mail via post-card pursuant to addresses the class administrator determines by means of a historic look-up process based on the text numbers to which the messages were sent. Courts have found this methodology reliable for locating class members. See, e.g., Bee, Denning, Inc. v. Capital Alliance Group, 310 F.R.D. 614, 623 (S.D. Cal. 2015) (holding "reverse look-up technology" was reliable and appropriate to identify class members); G.M. Sign, Inc. v. Finish Thompson, Inc., No. 07 c 5953, 2009 U.S. Dist. LEXIS 73869, at *11 (N.D. Ill. Aug. 20, 2009)  ("[plaintiff] may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to whom the fax was sent"). Once the addresses are located, notice will be provided through First Class U.S. Mail via post-card, which is sufficient. Adams v. S. Farm Bureau Life Ins. Co., 493 F.3d 1276, 1287 (11th Cir. 2007); Markos v. Wells Fargo Bank, NA, 2016 U.S. Dist. LEXIS 12541, No. 1:15-cv-01156 (N.D. Ga. Sept. 7, 2016) (May, L.) (approving postcard as part of notice program); Cross v. Wells Fargo Bank, NA, 2016 U.S. Dist. LEXIS 114141, No.1:15-cv-01270 (N.D. Ga. Aug. 18, 2016) (Story, R.) (same); T.A.N. v. PNI Digital Media, Inc., 2017 U.S. Dist. LEXIS 85058, No. 2:16-cv-132 (S.D. Ga. Wood,

L.)

The Notice will clearly state: "(1) the nature of the action; (2) the definition of the class certified; (3) the claims, issues or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude any member from the class who requests exclusion (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B). The proposed forms of notice will also provide further details about the Settlement and its benefits. [*See* Settlement Agreement, attached to Mutual Consent Motion to Approve Preliminary Settlement, Exhibit A] Accordingly, the notice should be approved.

## CONCLUSION

The Proposed Settlement is the result of extensive good faith negotiations, after thorough factual investigation and legal analysis, and are, in the opinion of Plaintiff's Counsel, who are experienced in these matters, fair, reasonable, and adequate. Therefore, Plaintiff respectfully requests that Plaintiff's Motion for Preliminary Approval of the Proposed Settlement, and for Authorization to Disseminate Notice be granted.  Wolford consents and joins this Motion.

Respectfully submitted this 21st day of December, 2017

30

By: s/ Scott L. Bonder
    Scott L. Bonder
    Georgia Bar No. 066815
    sbonder@friedbonder.com
    Joseph A. White
    Georgia Bar No. 754315
    jwhite@friedbonder.com
    Matthew R. Kahn
    Georgia Bar No. 833443
    mkahn@friedbonder.com

    FRIED & BONDER LLC
    1170 Howell Mill Road, NW
    Atlanta, Georgia  30318
    Telephone: (404) 995-8808
    Facsimile: (404) 995-8899
    Counsel for Plaintiff

By: s/ Samantha Duplantis
    California State Bar No. 316012
    Mintz Levin Cohen Ferris Glovsky
    and Popeo LLC
    Centry Plaza Towers 2029
    Century Park East Site 1370
    Los Angeles, CA 90067
    Telephone: (310) 586-3200
    Facsimile: (310) 586-3202
    Counsel for Defendant

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JENNIFER LIOTTA, on behalf of herself
and all others similarly situated,

    Plaintiff,

             Case No.: 1:16-cv-04634-WSD

  vs.

WOLFORD BOUTIQUES, LLC

    Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically served **Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval of Class Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, and Scheduling of a Final Approval Hearing** with the Clerk of Court using the CM/ECF system which will automatically send to the following attorneys of record:

Scott N. Sherman
Nelson Mullins Riley & Scarborough LLP
201 17th Street, N.W.
Suite 1700
Atlanta, GA 30363

Joshua Briones, E. Crystal Lopez, Samantha Duplantis
Mintz Levin Cohn Ferris Glovsky and Popeo P.C.
Century Plaza Towers 2029
Century Park East Suite 1370
Los Angeles, CA 90067


This 21st day of December, 2017.　　　　**FRIED & BONDER, LLC**

　　　　　　　　　　　　　　　　　　　　*/s/ Scott Bonder*
　　　　　　　　　　　　　　　　　　　　Scott L. Bonder
　　　　　　　　　　　　　　　　　　　　Georgia Bar No. 066815
　　　　　　　　　　　　　　　　　　　　Joseph A. White
　　　　　　　　　　　　　　　　　　　　Georgia Bar No. 754315
　　　　　　　　　　　　　　　　　　　　Matthew R. Kahn
　　　　　　　　　　　　　　　　　　　　Georgia Bar No. 833443

White Provision, Suite 305
1170 Howell Mill Rd. NW
Atlanta, GA 30318
Phone: (404) 995-8808
Facsimile: (404) 995-8899

33

# Exhibit "A"

## JND – WHAT WE DO

LEGAL | ADMINISTRATION

**JND Class Action Administration** delivers comprehensive administrative resources to its clients through its pre-settlement consultation, complete notice services, claims processing and validation, scalable call center capabilities, state of the art website design for static and interactive case specific sites, and an array of distribution services. The principals of JND have handled some of the most complex class action settlements in the country's history. The JND founders have worked with leading partners on both sides of the aisle, as well as with Fortune 500 companies to help design and effectuate class action settlements worth billions of dollars affecting hundreds of millions of people. Class Action Administration has been one of the leading administrators in the country for the past six years and was recently named "Best Claims Administrator" in the United States by the *National Law Journal*.

**JND Corporate Restructuring** focuses solely on the needs of companies in bankruptcy. With its technology-driven claims and noticing abilities, JND is a new breed of Claims Agent. The principals of JND along with the seasoned Restructuring management team has worked on some of the country's largest bankruptcy matters. JND helps navigate the intricacies of claims and noticing and provides clients with the support they need along the way. Armed with a powerful set of tools, from cutting-edge technology to top of the line equipment, JND Corporate Restructuring provides exactly the services clients need, including pre-filing services, creditor communications and inquiries, noticing, claims processing and analysis, balloting and tabulations, and disbursements. JND recently acquired UpShot Services LLC, the fastest growing company in the space and an industry trailblazer.

**JND Government Services** specializes in working with the unique needs of government entities throughout the United States. Based on prior experience with the Department of Justice (DOJ), the Federal Trade Commission (FTC), the Securities and Exchange Commission (SEC) and the Consumer Financial Protection Bureau (CFPB), as well as with State AGs throughout the country, JND is particularly well-situated to assist with all facets of any redress administration that requires outreach to constituents. JND's broad-ranging services include comprehensive noticing, claims processing and validation, contact services, state-of-the-art website design and distribution, and account reconciliation. JND is the only administration firm to offer this specialized service line.

**JND Mass Tort Administration** offers its extensive experience in both Global and Case Administrations. The JND team has been called upon by clients to create a database of information to design and implement a fair and reasonable distribution plan, construct portals for key stakeholders, develop and maintain case specific interactive websites, maintain sophisticated call center operations to manage claimant communications, handle mail center services, process claims, and provide wide-ranging distribution services. Additionally, JND efficiently manages all aspects of case intake, including Plaintiff Fact Sheet (PFS) preparation, retention, medical record retrieval, creating chronologies, evaluating and summarizing medical information, lien verification, HIPAA compliance and scheduling medical monitoring appointments.

**JND eDiscovery** partners with its clients to understand the specifics of each case and delivers a well-tailored litigation management solution. JND recently acquired Alloy Group, an industry frontrunner with deep project management and complex litigation experience. Our team understands that every case presents a unique set of variables and goals, JND selects the best tools suited to meet clients' needs. Our detailed services include targeted discovery requests, cost-effective hosting, data analysis, logical, physical and mobile forensics, reporting, data recovery, email examination, opposing evidence consultation, expert testimony, and timeline generation. JND's seasoned litigation management professionals are "hands-on" at all levels in order to help our clients identify, prioritize and make real-time decisions.

# WHAT WE'VE DONE

American Airlines Bankruptcy
Auction Houses Antitrust Litigation
Bank of America Securities Litigation
BP Deepwater Horizon Settlement
Cobell Indian Trust Settlement
Engle Smokers Trust Fund
Expedia Hotel Taxes & Fees Litigation
Federal Mogul Bankruptcy
GM Bankruptcy
GM Ignition Switch

Gulf Coast Claims Facility
IPO Securities Litigation
Music Publisher's Settlement
Red Bull False Advertising Litigation
Royal Ahold Securities Litigation
Stryker Modular Hip Settlement
T-Mobile Remediation Program
Verizon Wireless FTC Litigation
Visa/Mastercard Antitrust Litigation
Worldcom Securities Litigation

# WHO WE ARE

With over 70 years of collective experience in law and administration, ours is the most seasoned executive management team in the business. When you work with JND, your case receives the personal attention and expertise of our principals - Jen (**J**) Neil (**N**) and David (**D**).

**Jennifer Keough** has handled some of our country's largest, high-profile engagements and previously held executive positions at one of the then largest legal administration firms. Prior to forming JND, Jen worked as a class action business analyst at one of the country's most recognized law firms, responsible for managing complex class action settlements.

**Neil Zola** has personally overseen dozens of the most involved legal administration projects in our country's history. Prior to forming JND, Neil held positions as general counsel, chief operating officer and president at one of the then largest legal administration firms in the country.

**David Isaac** has been a leader in the legal administration business for over twenty years and is credited with changing the industry landscape by providing "one stop shopping" service offerings. David was previously the CEO of the then largest legal administration firms in the country and was a member of the global executive management team for its parent company.

# ADDITIONAL KEY EXECUTIVES

**Amanda Horn** is SVP of Client Services for JND Legal Administration. Amanda has spent over 20 years practicing law and in various leadership roles at well-known legal administration firms.

**Robert Klamser** is President of JND Corporate Restructuring Services. Robert specializes in bankruptcy claims and noticing; he also has years of experience in the operations of the business.

**Charles Lawson** is SVP of JND Government Services. Charles has more than 15 years of contracting, program management and leadership experience with the federal government.

**Scott Lombard** oversees JND eDiscovery and has years of complex litigation experience. Scott was previously an Emerging Markets Officer in the legal document management industry.

**Michael Sherin** is a Senior Advisor to JND Legal Administration.  Mr. Sherin brings over 30 years of legal and financial services, management consulting, and banking experience to all client engagements.

**Darryl Thompson** is CIO of JND Legal Administration.  Darryl has been in the legal administration field for over 6 years and has overseen the delivery of solutions for some of the largest projects in the industry.  Prior to that, Darryl spent 12 years in Health Care IT.

**Travis Vandell** is the CEO of JND Corporate Restructuring and has over 17 years of industry experience. Before this, Travis worked as a legal intern and represented Chapter 11 debtors, leading a number of cases.