IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JENNIFER LIOTTA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WOLFORD BOUTIQUES, LLC,<br><br>Defendant. | Case No.: 1:16-cv-04634-WSD |

**OPINION AND ORDER**

This matter is before the Court on the Parties Mutual Consent Motion for Preliminary Approval of Class Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, and Scheduling of a Final Approval Hearing (the "Motion").

**I.   Background**

   a.   Facts

The Court adopts the Parties agreed upon statement of facts as follows.

On or about July 7, 2016, Defendant arranged for and/or caused a text message advertising Wolford's goods to be sent to Class Members' telephones.

1

Plaintiff alleges that the text message advertisement did not properly identify Wolford or provide an appropriate opt-out mechanism. Wolford denies the allegations of wrongdoing.

On or about September 2, 2016, Wolford's agent sent a second round of text messages. Again, Plaintiff alleges that the text message advertisement did not properly identify Wolford or provide an appropriate opt-out mechanism. Wolford denies the allegations of wrongdoing and alleges that the texts were sent by its agent in error.

Through the course of discovery in this case, the Parties have determined that 1,684 Class Members received just one text from Wolford and 2,595 received both texts nationwide.

Plaintiff Jennifer Liotta brought the underlying action on behalf of herself and all other recipients of the text messages. After litigation of legal issues at the core of this case, Class Counsel and Wolford's Counsel negotiated a settlement of all claims that they believe to be fair to all parties and which resolves the uncertainty inherent in litigation.

    b.   <u>Procedural History</u>

On September 8, 2016, Plaintiff filed a Georgia Civil Action alleging a class in the State Court of Fulton County, Georgia. On or about December 16,

2016, Wolford timely removed the civil action to the United States District Court for the Northern District of Georgia. Plaintiff's Complaint alleged violations of TCPA by Wolford arising from an alleged insufficient identification of the sender and an insufficient opt-out mechanism.

On January 6, 2017, Wolford moved to dismiss Plaintiff's Complaint alleging, *inter alia*, a lack of standing. Defendant's lack of standing argument was based primarily on *Spokeo, Inc. v. Robins* in which the United States Supreme Court held that a concrete injury is required for Article III standing to sue. 136 S.Ct. 1549 (2016).

On March 30, 2017, this Court issued a detailed Opinion and Order denying Wolford's Motion to Dismiss. Thereafter, Plaintiff's Counsel and Wolford began the process of litigating the case, including written discovery and Plaintiff's Motion to Add a Party Defendant. Additionally, on June 2, 2017 Plaintiff moved for certification of the class.

    c.    <u>Proposed Settlement</u>

A copy of the Agreement is attached to the Motion as Exhibit A. In summary, pursuant to the Agreement, the parties ask this Court to certify the following Settlement Class:

> "Class" means the owners of the telephone numbers that are

claimed to have received one or both of the Text Messages sent by Wolford on July 7, 2016 and September 2, 2016. Excluded from the Class is the judge presiding over this matter, any members of his judicial staff, the officers and directors of WOLFORD, and persons who timely and validly request exclusion from the Class.

Pursuant to the Agreement, Wolford has agreed to pay each Class Member an amount commensurate with the number of text messages received by that Class Member. Each payment will be made via non-expiring and fully transferable gift cards that do not require any further expenditure by the Class Member. The nature of this settlement is outside the scope of a coupon settlement and the factors applicable to a cupon settlement need not be considered.

Pursuant to the Agreement, "Tier One" Class Members are those Class Member who received only one of the Text Messages. One thousand six hundred eighty-four (1,684) Class Members are Tier One Class Members. Each Tier One Class Member who submits a valid claim will be issued a gift card in the amount of $60.00. "Tier Two" Class Members" are those Class Members who received both Text Messages at issue. Two thousand five hundred ninety-five (2,595) Class Members are Tier Two Class Members. Each Tier Two Class Member who submits a valid claim will be issued a gift card in the amount of $120.00.

In addition to the Gift Cards, Wolford will cover all costs associated with

the Claims administrator, including notice to the Class Members. Notice will be provided to the Class Members by written mail via post-card pursuant to addresses determined from Wolford's records and/or a look-up on the text numbers using a historic look-up process as deemed necessary by the Claims Administrator.

Wolford will also pay Plaintiff's counsel directly without impact on the Class Member's recovery. Class Counsel will be paid in the amount of one third (1/3) of the maximum gross recovery by class members. Similarly, Wolford will consent to and pay a service award of $5,000.00 for Jennifer Liotta, the class representative. The service award is intended to compensate Ms. Liotta for her efforts in the litigation and commitment on behalf of the Settlement Class. Ms. Liotta's award will be paid directly by Wolford so as not to impact the amount paid to the Settlement Class. Ms. Liotta was the sole representative of the class in this litigation.

Finally, in exchange for the consideration described in the Agreement, the Plaintiff and the Settlement Class Members will release Wolford from any claims relating to the issues in this case.

## II. DISCUSSION

### A. Governing Standards

"Judicial review of a proposed class action settlement is a two-step process…." Dalton v. Cardworks Servicing, LLC, No. 09-00563, 2010 U.S. Dist.

LEXIS 135136 at *6 (S.D. Ala. Nov. 19, 2010) (internal citations omitted). *First*, the Court "makes a preliminary fairness evaluation." MCL § 21.632 (4th ed. 2004). The preliminary evaluation considers whether the settlement is "within the range of possible approval." Fresco v. Auto Data Direct, Inc., No. 03-61063, 2007 U.S. Dist. LEXIS 37863, at *11-12 (May 11, 2007, S.D. Fl); *see also* In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981).

> "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2015). Second, after preliminary approval and notice to the Class, the Court conducts a final approval hearing to more fully assess the fairness, reasonableness, and adequacy of the settlement. *Id.*

The law favors the settlement of class actions. Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984) ("our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."). "[T]here is a strong judicial policy favoring settlement and…particularly in class action suits, there is an overriding public interest in favor of settlements." Meyer v. Citizens and Southern Nat'l Bank, 677 F. Supp. 1196, 1200 (M.D. Ga. 1988) (Elliott, R.) (citation and internal quotations omitted). "Settlements conserve judicial resources by avoiding the expense of a

complicated and protracted litigation process and are highly favored by the law." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (Thrash, T.).

This Court has broad discretion in approving a settlement. Id. At this stage, "the Court should not conduct a trial on the merits." Id. Instead, a "district court may rely upon the judgment of experienced counsel for the parties...[and] [a]bsent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" Nelson v. Mead Johnson & Johnson Co., 484 F. App'x 429, 434 (11th Cir. 2012) (quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)); see also In re Motorsports, 112 F. Supp. 2d at 1333.

In the Eleventh Circuit, "[p]reliminary approval is appropriate where the proposed Settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." In re Checking Account Overdraft Litig., 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted). In addition, at the preliminary approval stage, district courts within this Circuit have looked ahead to the Bennett factors, the standard for final approval:

(1) the likelihood of success at trial; (2) the range of possible

7

> recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.

Columbus Drywall & Insulation, Inc. v. Masco Corp., 258 F.R.D. 545, 558-59 (quoting Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984)). In this case, the Proposed Settlement should be approved. As detailed below, it is the product of arm's length negotiations, fairly compensates the Class Members, and the Bennett factors weigh in favor of approval.

    B.    Finding of Fact and Conclusions of Law

Based pnn the pleadings and the representations of the Parties, this Court preliminarily approves the proposed Settlement as the product of good faith, arm's length negotiations, by experienced counsel. Here, it appears that the parties began discussing settlement after the Court denied Wolford's Motion to Dismiss, and engaged in discovery. Based upon the pleadings that ultimately resulted in the Agreement and the quality of the Motion papers and exhibits, the parties devoted significant time and effort to investigating the facts and legal issues and reaching fair and reasonable settlement terms.

Both the Settlement Class and Wolford, were represented by experienced class action counsel. The terms of the Agreement beky any suggestion or concern

8

of collusion such that the presumption of fairness, adequacy, and reasonableness shold attach to the Agreement. *E.g.,* T.A.N. v. PNI Digital Media, Inc., No. 2:16-cv-132, 2017 U.S. Dist. LEXIS 85058 (S.D. Ga. Jun. 2, 2017) (Wood, L.) (quoting MCL Third, § 30.42 (1995)).

The settlement itself is reasonable. Those class members who received just one text message will receive a $60.00 non-expiring and fully transferable gift card and those who received two text messages will get $120. Thus, each class member will be receive direct compensation per text in an amount that is a fair and reasonable settlement of claims without the risk of litigation.

    C.    <u>The Settlement Class Satisfies Rule 23(a)</u>

Rule 23(a) requires proof that of numerosity, commonality, typicality and adequacy. Each element is met here.

    *1.    Numerosity*

Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." The proposed class consists of 4,279 persons, so this requirement is easily met. Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (numerosity is met with 40 class members).

    *2.    Commonality*

"The commonality requirement of Rule 23(a)(2) demands 'questions of law

9

or fact common to the class." Legg v. Voice Media Group, Inc., 2015 U.S. Dist. LEXIS 61836 *11 (S.D. Fl. May 5, 2014). This is a "relatively light burden." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 (11th Cir. 2009). "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." Williams v. Mohawk Indus., 568 F.3d 1350, 1355 (11th Cir. 2009). "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." Morefield v. NoteWorld, LLC, NO. 1:10-CV-00117, 2012 U.S. Dist. LEXIS 54664 at *6 (S.D. Ga. April 18, 2012) (Hall. R.).

Here, the same general course of conduct applies to all class members: Wolford and its agent sent text message to all the members, and the class members contend that those same texts failed to adequately identify Wolford and failed to include an appropriate opt-out mechanism. The common issues include, but are not limited to: (a) whether the text messages adequately identified Wolford; (b) whether the text messages contained an appropriate opt-out mechanism; (c) whether Wolford acted intentionally; and (d) whether Wolford had obtained the requisite level of consent. Courts routinely find the commonality element satisfied in TCPA cases. See Legg, 2015 U.S. Dist. LEXIS 61836 at *10; C-Mart, Inc., 299 F.R.D. at 688; Physicians Healthsource, Inc., 2014 U.S. Dist. LEXIS 177222 at

*13-14; Palm Beach, 2015 U.S. Dist. LEXIS 167142 at *11-12.

### 3. Typicality

The typicality requirement primarily focuses on whether the named plaintiffs' claims "have the same essential characteristics" as claims of other class members. See, e.g., Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985). The burden to meet typicality is also light. In re Disposable Contact Lens Anti. Lit., 170 F.R.D. 524, 532 (M.D. Fla. 1996). "Class members' claims need not be identical to satisfy the typicality requirement." Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012). All that is required is a "sufficient nexus" between the named representative and the class members. Id. "This nexus exists if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Id.

Here, the Plaintiff's claims are typical of those of the Class because they arise from the same conduct of Wolford in sending the text messages. They are also based on the same legal theory that Wolford violated the TCPA by sending the text messages. Typicality is therefore met.

### 4. Adequacy of Representation

The adequacy requirement is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

"This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). In assessing this, courts primarily consider "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." Lyons v. Georgia-Pac. Corp. Sala-Ried Employees Ret. Plan, 221 F.2d 123, 1253 (11th Cir. 2000).

These requirements are met here. The Plaintiff's interests are not antagonistic to, but are the same as, those of the absent class members because they all seek to prove that Wolford violated the TCPA by sending the text messages. In addition, the Plaintiff has retained qualified and experienced counsel to pursue this action.

D.  Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." When "[c]onfronted with a request for settlement- only class certification, a district court need not inquire whether the

case, if tried, would present intractable management problems." <u>Achem</u>, 521 U.S. at 620.

### 1. *Predominance*

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." <u>Carriuolo v. GM Co</u>., 823 F.3d 977, 985 (11th Cir. 2016). Predominance does not require that all questions be common, but rather that "a significant aspect of the case...can be resolved for all members of the class in a single adjudication." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal citations omitted). The requirement for predominance is met here because the overwhelming issues of law and fact are common to all class members. This is why classes are routinely certified in TCPA cases. See Sec. II, *supra.*

### 2. *Superiority*

"The superiority inquiry focuses on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" <u>Physicians Healthsource, Inc.</u>, 2014 U.S. Dist. LEXIS 177222 at *22-23 (quoting in part <u>Sacred Heart Health Sys. v. Humana Military Healthcare Servs.</u>, 601 F.3d 1159, 1183-84 (11th Cir. 2010). It has been recognized that class

13

actions are often superior to individual TCPA actions because the cap on statutory damages, and no fee shifting provision, makes it unlikely an individual would pursue the claim alone. "As a general matter, TCPA classes are routinely certified as class actions because the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all point toward the superiority of a class action." Id. at *22-23. Indeed, it is unlikely that a plaintiff would pay a $350 filing fee to bring an individual TCPA claim for $500. Mims v. Arrow Fin. Servs., LLC, 132 S.Ct. 740, 753 (2012). The same is true here, satisfying the superiority prong.

E. Adequacy of Counsel Requirements Are Satisfied

In appointing class counsel, Rule 23(g) states that the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class…."

Here, the Proposed Class Counsel has served as the sole counsel in this action, identifying and investigating the claims. Proposed Class Counsel prepared

14

the Complaint, successfully defended the motion to dismiss, began critical discovery, moved for class certification and, and negotiated a fair resolution with Wolford. Proposed Class Counsel has intensely investigated the law and its application to the facts surrounding this class action, and Proposed Class Counsel has experience in handling complex class actions. Thus, the Plaintiff respectfully requests that the Court appoint as Class Counsel, Scott L. Bonder and Joseph A. White of Fried & Bonder, LLC.

### F. Proposed Notice to Class Members is Satisfactory

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(c)(2)(B) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "[W]hat amounts to reasonable efforts under the circumstances is for the court to determine after examination of the available information and the possible methods of identification." In re Domestic Air, 141 F.R.D. 535, 539 (N.D. Ga.). The notice "must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." Id. at 553.

The Notice Program satisfies the requirements or Rule 23. Notice will be provided to the Class Members by written mail via post-card pursuant to addresses the class administrator determines by means of a historic look-up process based on the text numbers to which the messages were sent. Courts have found this methodology reliable for locating class members. See, e.g., Bee, Denning, Inc. v. Capital Alliance Group, 310 F.R.D. 614, 623 (S.D. Cal. 2015) (holding "reverse look-up technology" was reliable and appropriate to identify class members); G.M. Sign, Inc. v. Finish Thompson, Inc., No. 07 c 5953, 2009 U.S. Dist. LEXIS 73869, at *11 (N.D. Ill. Aug. 20, 2009) ("[plaintiff] may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to whom the fax was sent"). Once the addresses are located, notice will be provided through First Class U.S. Mail via post-card, which is sufficient. Adams v. S. Farm Bureau Life Ins. Co., 493 F.3d 1276, 1287 (11th Cir. 2007); Markos v. Wells Fargo Bank, NA, 2016 U.S. Dist. LEXIS 12541, No. 1:15-cv-01156 (N.D. Ga. Sept. 7, 2016) (May, L.) (approving postcard as part of notice program); Cross v. Wells Fargo Bank, NA, 2016 U.S. Dist. LEXIS 114141, No.1:15-cv-01270 (N.D. Ga. Aug. 18, 2016) (Story, R.) (same); T.A.N. v. PNI Digital Media, Inc., 2017 U.S. Dist. LEXIS 85058, No. 2:16-cv-132 (S.D. Ga. Wood, L.)

The Notice, a copy of which is attached to the Agreement, states: "(1) the

nature of the action; (2) the definition of the class certified; (3) the claims, issues or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude any member from the class who requests exclusion (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members." Fed. R. Civ. P. 23(c)(2)(B). The proposed forms of notice will provides further details about the Settlement and its benefits. Accordingly, the proposed form of notice is approved.

G.  Class Definition

The proposed class definition is preliminarily approve as:

A copy of the Agreement is attached to the Motion as Exhibit A. In summary, pursuant to the Agreement, the parties ask this Court to certify the following Settlement Class:

> "Class" means the owners of the telephone numbers that are claimed to have received one or both of the Text Messages sent by Wolford on July 7, 2016 and September 2, 2016. Excluded from the Class is the judge presiding over this matter, any members of his judicial staff, the officers and directors of WOLFORD, and persons who timely and validly request exclusion from the Class.

III. **SCHEDULE**

    a. Within ten days hereof Wolford or a vendor retained by Woldord shall, at Wolford's expense, notify federal and state officials as specified in 28 U.S.C. §§ 1715(a) and (b);

    b. Wolford shall immediately engage, at its expense, JND Legal Administration to begin administration of the Preliminary Settlement Class in accordance with the Settlement Agreement;

    c. The Administrator shall begin the process of providing notice pursuant to the Settlement Agreement as soon as practicable substantially and materially in the form and by the method attached to the Settlement Agreement;

    d. The Administrator shall provide monthly status updates to the Parties concerning progress and anticipated mailing of notice to class members;

    e. The Parties shall notify the Court once the notice period begins with a Proposed Schedule for Objections and Final Approval Hearing.

## IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED AND ADJUDGED that the Parties Mutual Consent Motion for for Preliminary Approval of Class Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, and Scheduling of a Final Approval Hearing is APPROVED.

**SO ORDERED** this __ day of _____, ___

_____

William S. Duffey, Jr.

United States District Judge